UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PETER LENDVAY**,                                         Case No. 1:11 CV 2791

              Plaintiff,                          Magistrate Judge James R. Knepp II

    v.                                                  MEMORANDUM  OPINION  AND
                                               ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

              Defendant.

### INTRODUCTION

Plaintiff Peter Lendvay seeks judicial review of Defendant Commissioner of Social Security's decision to deny Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 16). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

On January 6, 2006, Plaintiff filed an application for DIB claiming he was disabled due to an affective disorder and degenerative disc disease of the lumbar spine. (Tr. 16, 43-44, 59). He alleged a disability onset date of September 9, 2002. (Tr. 16). His claim was denied initially (Tr. 57) and on reconsideration (Tr. 57). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 57). Plaintiff (represented by counsel), a medical expert (ME), and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (Tr. 57, 752). The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and

remanded the case, directing the ALJ to consider specific medical opinions and obtain additional ME testimony. (Tr. 46-47). In the meantime, Plaintiff protectively filed for SSI benefits on October 8, 2008. (Tr. 43-44, 224). A remand hearing was held before the ALJ on March 22, 2010. (Tr. 16). Plaintiff (again represented by counsel), a different ME, and a different VE appeared and testified. (Tr. 23). Thereafter, the ALJ consolidated and considered Plaintiff's DIB and SSI claims and denied them in a decision dated July 7, 2010. (Tr. 13). The ALJ made similar findings at steps one through three as in his prior decision (Tr. 18), but he changed Plaintiff's exertional level from sedentary to light and changed some restrictions. (Tr. 20). The Appeals Council denied Plaintiff's request for review of this second ALJ opinion, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On December 27, 2011, Plaintiff filed the instant case. (Doc. 1).

Plaintiff only challenges the ALJ's treatment of Dr. Kim's assessment of his functional limitations, which provides for only physical limitations. (*See* Doc. 17, 14-19). Accordingly, the undersigned addresses only the record evidence pertaining to Plaintiff's health as it relates to those physical restrictions.  *See, e.g., Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Holden appears to raise in her brief on appeal."). Further, Plaintiff addresses medical records which pre-date his alleged onset date. While medical evidence predating Plaintiff's onset date is not irrelevant, the Court may only consider evidence from those records in combination with evidence after the onset date to determine disability. *De Board v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006).

## FACTUAL BACKGROUND

Plaintiff has a high school education and was 43 years old at the time of his alleged onset

date in September 2002. (Tr. 30). Prior to his claimed disability, Plaintiff worked as an auto service manager and vice-president of a technical design department. (Tr. 784). Plaintiff reported he stopped working on September 19, 2002 because of "mental anguish [and] stress" (Tr. 255, 262). In 2004, Plaintiff said he went outside a few times a week and could prepare meals. (Tr. 267). He could also do some laundry, light cleaning, and minor repairs. (Tr. 267). In 2006, Plaintiff drove independently, lived alone, did some cleaning and laundry, read or watched television, and took care of his dog. (Tr. 310-17). Before his illness, Plaintiff reported he could "concentrate, fe[lt] comfortable around people, work[ed], enjoy[ed] activities, [and] fe[lt] good about [him]self." (Tr. 311). In October 2008, Plaintiff said he cared for his dog and took out the garbage, but had trouble sleeping. (Tr. 360). He could shower, dress, and bathe, albeit slowly, but said he did not cook any longer and seldom drove. (Tr. 361). He claimed he could only lift five pounds without back pain, but could walk for a half-hour through the grocery store and he would need to sit after an hour of walking. (Tr. 363). His hobbies were hunting and fishing, but he said he rarely did those anymore. (Tr. 364).

Diagnostic Testing

An x-ray of Plaintiff's lumbar spine dated November 9, 2001 showed no acute bony abnormality and a minimal L3 spur, noted as "a tiny spur of [the] superior end plate of L3 projecting toward the left." (Tr. 547). A subsequent MRI dated November 11, 2001 revealed a broad-based disc herniation at L5-S1 and mild disc dehydration at L2-3. (Tr. 546).

An MRI of Plaintiff's lumbar spine dated June 13, 2004 showed discal pathology at L2-3 and L5-S1, without major central or neural foraminal stenosis. (Tr. 542). A nerve conduction study performed in September 12, 2005 demonstrated findings consistent with moderate bilateral L5 and S1 radiculopathy. (Tr. 538).

Following a motor vehicle accident, x-rays of Plaintiff's thoracic and cervical spine dated July 30, 2005 showed no evidence of fractures or dislocations, and minimal degenerative changes were present at the lower cervical spine. (Tr. 541).

Another MRI of Plaintiff's lumbar spine on August 5, 2005 showed interval development of right lateral disc protrusion at L4-5 with narrowing of the distal neuroforamen, with possible impingement of the exiting right L4 nerve root and stable small central disc protrusion at L5-S1, without definite impingement. (Tr. 540).

An x-ray of Plaintiff's lumbar spine dated December 15, 2008 revealed no evidence of wedge fracture or compression deformity. (Tr. 583). There was no significant intervertebral disc joint spacing, no evidence of spodylolisthesis, no abnormal calcifications, and pedicles and sacrolliac joints were unremarkable, but there was a mild osteophyte at L2 and L3 in an otherwise normal study. (Tr. 583).

Dr. Vladelen Kim

Although sometimes illegible or difficult to decipher, Dr. Kim's treatment notes largely reflected Plaintiff's subjective complaints of pain and conservative treatment. Plaintiff began treatment with Dr. Kim at Family Physicians Associates on June 14, 1999 for feelings of nervousness and anxiety. (Tr. 532). On November 9, 2001, Dr. Kim treated Plaintiff for lower back pain but noted he used Advil with good results and wore a back brace which helped with pain.[1] (Tr. 528). On examination, Plaintiff's back was non-tender with no radiation of pain.  (Tr. 528).

---

1. Plaintiff said Dr. Kim's treatment notes indicate that his back brace was not helping. However, the opposite is reflected in the record: "has been wearing back brace [] has helped pain." (Tr. 528).

Plaintiff returned on July 11, 2002 and Dr. Kim noted he would observe Plaintiff's cyst.[2] Dr. Kim's treatment notes from December 9, 2002 noted Plaintiff was having the cyst removed. (Tr. 526).

Almost a year later, Plaintiff returned to Dr. Kim on November 9, 2003 and reported upper back and neck pain along with anxiety, fatigue, and palpitations. (Tr. 524). Dr. Kim listed Plaintiff's medications as Xanax, Soma, and Ultracet. (Tr. 524). Plaintiff returned June 18, 2004 complaining of severe lower back pain which radiated down his left leg. (Tr. 523). Dr. Kim noted tenderness and possible decreased range of motion. (Tr. 523). He also administered a Toradol injection. (Tr. 523).

On July 29, 2005, Plaintiff saw Dr. Kim after a motor vehicle accident and reported upper back and neck pain with numbness in his hands and legs. (Tr. 522). On August 2, 2005, Plaintiff returned for a follow-up and reported his lower back pain had gotten worse since the accident. (Tr. 521). Although filled with abbreviations and frequently illegible, Dr. Kim's notes indicated Plaintiff had decreased range of motion. (Tr. 521). On August 15, 2005, Dr. Kim noted Plaintiff's soreness in his lower back, neck, and shoulder was "feeling better". (Tr. 520). On September 2, 2005, Plaintiff was treated for lower back pain and Dr. Kim listed Advil, Xanax, and Lexapro as Plaintiff's medications. (Tr. 519). On October 11, 2005, Plaintiff returned for a  reassessment of his back and reported he was "a little better". (Tr. 518).[3]

Plaintiff returned to Dr. Kim on July 9, 2007 and reported being very tired, not having any

2. Plaintiff alleged Dr. Kim's treatment notes indicated that he suffered from occasional palpitations; however, this is not clear from the notes. (Tr. 527).

3. On August 15, 2005, August 23, 2005, August 25, 2005, August 29, 2005, September 2, 2005, September 27, 2005, September 29, 2005, October 5, 2005, and October 11, 2005, physical therapy evaluation forms noted Plaintiff suffered from neck and back pain but had full range of motion, strength, and posture. (Tr. 509-14).

5

energy, and having numbness in his hands when he slept. (Tr. 505). Plaintiff requested a prescription for anxiety medication. (Tr. 505).

On November 28, 2007, Plaintiff was treated for arrhythmia, anxiety, and chest pain. (Tr. 622). On January 14, 2008, Plaintiff had a halter monitor test for his rapid heart rate, and no back pain was noted or reported at that time. (Tr. 621-22).

On March 4, 2008, Plaintiff saw Dr. Kim for unspecified reasons. (Tr. 620). It was merely noted Plaintiff was "here today" and Xanax was listed as medication. (Tr. 620). On March 6, 2008, Dr. Kim completed a medical source statement assessing what Plaintiff could do despite his impairments. (Tr. 548). Dr. Kim opined Plaintiff could stand or walk for one hour at a time and three hours in an eight-hour work day due to back pain. (Tr. 548). He could sit for two hours at a time and for three hours in an eight-hour work day, and he would need to rest by lying down or reclining in a supine position for a total of three hours in an eight-hour work day. (Tr. 548-49). When asked to do so, Dr. Kim noted no objective findings supporting Plaintiff's need to rest. (Tr. 549). He found Plaintiff could lift and carry one-to-five pounds frequently and six-to-ten pounds occasionally, and found he could occasionally balance but never stoop. (Tr. 549-50). Dr. Kim checked boxes indicating Plaintiff's conditions with restrictions existed since September 19, 2002. (Tr. 550). He also checked that Plaintiff would be absent from work more than three times a month due to his impairments. (Tr. 550). He listed Plaintiff's diagnoses of degenerative disc disease, lower back pain, anxiety, depression, and arrhythmia. (Tr. 550).

The same day, Dr. Kim filled out a pain questionnaire and noted Plaintiff's lower back pain, degenerative disc disease, depression, and anxiety were capable of producing pain. (Tr. 551). He stated Plaintiff's pain affected his ability to do work-related activities, but did not specify which

activities were affected. (Tr. 551). Dr. Kim found  MRIs revealed degenerative disc disease and Plaintiff was truthful in his perception of pain. (Tr. 551).

On June 27, 2008, Dr. Kim completed another medical source statement and noted Plaintiff only had the ability to occasionally use both hands and arms for reaching, handling, and fingering as of January 2008, based on diagnosis of carpal tunnel syndrome. (Tr. 562). He checked a box indicating that Plaintiff would be absent more than three times a month due to his impairments or treatment. (Tr. 562). On July 18, 2008, Plaintiff returned and reported lower back pain, hip pain, and rapid heart beat. (Tr. 616). Dr. Kim prescribed Percocet for pain. (Tr. 616). Plaintiff reported similar complaints on December 17, 2008, and Dr. Kim listed his medications. (Tr. 615).

Plaintiff treated with Dr. Kim on April 7, 2009, complaining of pain in his lower back, hips, and legs, and pain from carpal tunnel syndrome. (Tr. 614). That same day, Dr. Kim filled out another questionnaire and listed Plaintiff's diagnoses of low back pain, anxiety, depression, bipolar disorder, carpal tunnel syndrome, arthralgia, arrhythmia, and degenerative disc disease. (Tr. 612). Dr. Kim noted Plaintiff could not perform sustained work activity due to anxiety, joint and back pain, and carpal tunnel syndrome. (Tr. 613).

 In a letter to Plaintiff's attorney dated March 29, 2010, Dr. Kim stated Plaintiff had ongoing lower back pain with radiculopathy into his hip, and he had examined him "numerous times and [] treated him with prescriptive therapy". (Tr. 410).

Opinion Evidence

On December 18, 2008, Plaintiff saw Dr. Eulogio Sioson for a consultive examination. (Tr. 576). Plaintiff reported he had not worked since 2002 because of "heart, back/joint pains and mental issues." (Tr. 576). Dr. Sioson noted Plaintiff had heart palpitations about eight times a day, lasting

one minute each. (Tr. 576). He noted Plaintiff had degenerative disc disease, spinal stenosis, and sciatica with constant low back pain. (Tr. 576). Plaintiff reported he "live[d] alone and [could] do some minor cleaning" and prepared light meals. (Tr. 576). He was able to dress, groom, shower, button, tie, and grasp, but had problems bending and needed help with his shoes. (Tr. 576). On examination, Plaintiff walked normally without an assistive device but lost balance when he tried to perform a heel/toe walk. (Tr. 577). He had marked lower back tenderness and could barely raise his legs for a straight leg raise testing. (Tr. 577). Dr. Sioson concluded Plaintiff "had unusually severe back pains with no apparent radiculopathy or gross deformity and inflammatory changes in his joints." (Tr. 577). He noted, "Except for pain limitation [], neuromuscoloskeletal data showed no other objective findings that would affect work-related activities such as walking, climbing, standing, carrying, lifting, handling, sitting[,] and traveling." (Tr. 577).

On December 31, 2008, state agency physician Kathryn Drew, M.D., reviewed Plaintiff's medical records and assessed Plaintiff's physical residual functional capacity (RFC). She found Plaintiff could occasionally and frequently lift and/or carry ten pounds; and stand and/or walk at least two hours in an eight-hour workday (limited to three hours); and sit about six hours in an eight-hour workday. (Tr. 604). She found his ability to push or pull was unlimited. (Tr. 604). She further determined Plaintiff could frequently balance; occasionally climb ramps or stairs, stoop, and crouch; but never climb ladders, ropes, or scaffolds, kneel, or crawl. (Tr. 605). Plaintiff was limited to frequent reaching, fingering, handling, and feeling bilaterally. (Tr. 606). She found Plaintiff's statements were only partially credible, noting he took care of a dog, performed activities of daily living, drove, and performed some household chores. (Tr. 608). She also noted physical findings did not support Dr. Kim's assessment that Plaintiff must rest by lying down during the work day.

8

(Tr. 609).

On May 13, 2009, state agency physician Willa Caldwell, M.D., reviewed Plaintiff's records and assessed that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; and was limited to no overhead reaching bilaterally. (Tr. 648-52). She gave Dr. Kim's opinion partial weight. (Tr. 654).

ME Testimony

On March 22, 2010, Dr. Goren, an impartial ME, testified Plaintiff's impairments did not meet or equal a medical listing in 20 C.F.R. Part 404, Subpart P, App. 1, and Plaintiff had an RFC for a reduced range of light work. (Tr. 732). Specifically, Dr. Goren stated that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; never climb ladders, ropes, or scaffolds; and occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. (Tr. 732). He found Plaintiff could not have high production quotas and could have only superficial interaction with supervisors, co-workers, and the general public. (Tr. 732). He also testified Dr. Kim's opinion was not supported by the medical evidence of the record. (Tr. 733-34). Specifically, Dr. Goren opined Dr. Kim's opinions were conclusory statements unsupported by any of his own physical examination findings. (Tr. 734).

ALJ Decision

In a written decision dated July 7, 2010, the ALJ found Plaintiff's severe impairments of degenerative and discogenic back disorder and affective disorder did not meet or medically equal a listed impairment. (Tr. 17, 19). The ALJ found Plaintiff was not disabled and had the RFC to:

[P]erform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently. He can sit up to six hours in an eight hour work day and stand and walk up to six hours in an eight hour work day. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. He can perform frequent balancing, occasional stooping, occasional kneeling, occasional crouching and occasional crawling. The claimant's ability to perform manipulative, communicative and visual functions is within normal limits. The claimant must avoid workplace hazards including moving machinery and unprotected heights. The claimant cannot engage in work involving arbitration, confrontation or negotiation. He can have no more than minimal interaction with the public, co-workers or supervisors. The claimant cannot be responsible for others and he cannot perform supervisory tasks.

(Tr. 20).

The ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were not credible the extent they were inconsistent with his RFC. (Tr. 22). In making this determination, the ALJ discussed Plaintiff's long treatment history with Dr. Kim but noted his treatment notes only reflected Plaintiff's subjective complaints of pain rather than Dr. Kim's observation of Plaintiff's physical functioning. (Tr. 22). The ALJ summarized Plaintiff's diagnostic testing, including Dr. Kim's review of the same. (Tr. 22-23). After summarizing specific treatment notes pointed out by Plaintiff's counsel, the ALJ found Dr. Kim's statements were "broad [and] conclusory" and were not supported by his own record or that of others. (Tr. 27). Plaintiff's counsel submitted a post-hearing brief to the ALJ arguing that "[c]learly a physical examination must have been completed prior to Dr. Kim sending [Plaintiff] to an expensive diagnostic test." (*See* Tr. 27, 403). In response, the ALJ stated:

I believe that for an exam to have "clearly" been performed, it would have been reflected in the treating source notes as Dr. Kim did prior to the alleged onset date of disability. I think what is clear is that Dr. Kim recorded that the claimant made statements regarding pain, sent him for medical imaging and continued treatment based on the finding of degenerative disc disease. The fact that Dr. Kim appears to give credence to the claimant's complaints of pain based on the MRI findings can be inferred from Exhibit 9F:4. However, I cannot find that Dr. Kim conducted physical

examinations of the claimant anywhere in his treatment records. Therefore, that fact
is not "clear."

(Tr. 27).

The ALJ further found that "[w]hile Dr. Kim ha[d] been the treating physician of record for

12 years, Dr. Kim did not record any clinical findings." (Tr. 27). Specifically, Dr. Kim's notes did

not include findings of Plaintiff's muscle strength, range of motion, muscle tone, reflexes, his ability

to walk in the examination room, or his ability to sit on the examination table by himself. (Tr. 27).

He further noted Dr. Kim did not indicate, based on his own observations, what actions caused

Plaintiff's pain to increase or decrease. (Tr. 27).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence

is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health &*

*Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact

if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474

F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a

preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as

substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

11

### STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

5.  Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) &

12

416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Plaintiff challenges the ALJ's rejection of treating physician Dr. Kim's assessment of his physical limitations – specifically, the ALJ's determination that Dr. Kim's assessment of Plaintiff's functional limitations were conclusory and not supported by his own treatment notes or other medical evidence in the record. (Doc. 17, at 14-19; Doc. 25). Plaintiff further argues the ALJ erred by not fully developing the record because he did not recontact Dr. Kim to clarify his treatment notes. (Doc. 17, at 19-20).

### *Treating Physician Rule*

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.927(c). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability; (4) consistency; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory

13

diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In addition, even if the treating physician's opinion is not entitled to "controlling weight," there is nevertheless a rebuttable presumption that it deserves "great deference" from the ALJ. *Rogers*, 486 F.3d at 242. Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* Failure to do so requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.*

Medical opinions are defined as "statements from physicians . . . that reflect judgements about the nature and severity of [a claimant's] impairments, including . . . symptoms, diagnosis, and prognosis, what [a claimant] can still do despite the impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§404.1527(a); 416.927(a). The regulations provide that some statements by physicians – specifically, statements or opinions from medical sources on a claimant's residual functional capacity or that you are "disabled" – are not considered medical opinions, but rather administrative findings that would direct the determination of disability. 20 C.F.R.

14

§§404.1527(d), 416.927(d); *see also* SSR 96-5p, 1996 WL 374183. Nonetheless, an ALJ may not disregard them. "Treating source opinions on issues reserved to the Commissioner will never be given controlling weight. However, the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *6; *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).

Here, the ALJ stated he was affording Dr. Kim's functional limitation opinion "no weight" because it was not based on his own findings or other evidence in the record. (Tr. 28). While the ALJ recognized Dr. Kim treated Plaintiff for twelve years, he agreed with Dr. Goren that Dr. Kim's treatment notes did not reflect the degree to which Plaintiff's impairments caused limitations on his basic work activities. For example, the ALJ pointed out "it appeared" the only observations Dr. Kim made regarding Plaintiff's physical functioning occurred on November 9, 2001, almost a year before Plaintiff's onset date. (*See* Tr. 27). At that time, Dr. Kim observed Plaintiff's back was not tender, there was no radiation of pain, straight legs raise tests were negative, and his deep tendon reflexes were intact. (*See* Tr. 27, 528). After Plaintiff's onset date, despite minimal references to decreased range of motion and tenderness, the ALJ pointed out Dr. Kim's treatment notes failed to reflect his observations of Plaintiff's functional limitations. This reasoning was "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242.

The fact that Dr. Kim mentioned decreased range of motion and tenderness on a few occasions over the twelve year treatment period (Tr. 521, 523, 618, 621) does not undermine the ALJ's decision, because substantial evidence supports the ALJ's conclusion. For instance, Dr. Kim's treatment notes largely reflect Plaintiff's complaints of back pain, anxiety, palpitations, and carpal tunnel. (Tr. 505, 518, 519, 522, 524, 532, 622). Importantly, during the same time period Dr. Kim

15

mentioned decreased range of motion, Plaintiff's physical therapy notes reflected Plaintiff had full range of motion, strength, and posture. (Tr. 509-14). Moreover, Dr. Kim's treatment of Plaintiff was relatively conservative in comparison to the severe symptoms alleged and limitations suggested. For instance, Dr. Kim treated Plaintiff's back pain for twelve years with Advil, one Todoral injection, and Percocet in the last few years. (Tr. 523, 528, 616). Further, Dr. Kim provided no basis for the limitations he expressed on the questionnaire, even though he was requested to do so. *See, e.g, Price v. Comm'r of Soc. Sec.*, 342 F. App'x 173, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion [on a questionnaire] regarding [a claimant's] impairments, the ALJ did not err in discounting his opinion.").

In addition, Dr. Sioson observed no apparent radiculopathy or gross deformity during the consultive exam, and except for pain limitations, there were no other objective findings that would affect Plaintiff's work related activities. Further, Dr. Drew found Dr. Kim's opinion was not supported by physical findings.

Plaintiff also argues that after affording Dr. Kim's opinion no weight, the ALJ erred by not stating specific reasons for not giving deferential weight to Dr. Kim's opinions according to the factors in 20 C.F.R. §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6). (Doc. 25, at 3). This is simply not the case.

On direct order from the Appeal Council's remand opinion, the ALJ cited specific reasons for discounting Dr. Kim's opinion – that it was inconsistent and not supported by his own records and other medical evidence in the record. The ALJ supported his reasons with objective evidence in the record and noted Dr. Kim's lack of physical or clinical findings throughout a twelve-year treatment relationship. These reasons touched upon several of the factors an ALJ is required to consider in §§ 404.1527(d) and 416.927(d) – treatment relationship, nature and extent of the

16

treatment relationship, supportability, and consistency – which is all that is required. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (While the stated reason for discounting a physician was brief, it was sufficient because it accounted for several factors in § 404.1527).

Here, although Plaintiff and Dr. Kim's treatment relationship spanned twelve years, his treatment records and clinical observations did not support the extreme work-related limitations he prescribed. This is especially apparent in light of Dr. Goren's testimony, Dr. Sioson's assessment, physical therapy records, and the state agency assessments. Plaintiff cites some of Dr. Kim's records (some preceding Plaintiff's alleged onset date) to argue Dr. Kim provided observations of Plaintiff's physical functioning. But these sparse notations do not support Dr. Kim's limitations in light of substantial medical evidence in the record to the contrary.

### Duty to Develop Record

Plaintiff also argues the ALJ had a duty to recontact Dr. Kim in order to clarify the doctor's opinion. An ALJ has a duty to develop the record because of the non-adversarial nature of Social Security benefits proceedings. *See Heckler v. Campbell*, 461 U.S. 458, 470 (1983). The duty to develop the record, however, is balanced with the fact that "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (explaining claimant's burden to prove disability).

An ALJ must recontact the treating physician if he finds the evidence from the treating physician is inadequate to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1512,

17

416.912 (2011).[4] "The duty to recontact is 'triggered when the evidence is insufficient to make an informed determination, not when the evidence is insufficient to make a favorable determination.'" *Daniels v. Astrue,* 2010 WL 599634, at *2 (E.D. Ky. 2010) (*quoting Pearson v. Barnhart*, 2005 WL 1397049, at *4 (E.D. Tex. 2005)).

Here, Dr. Kim's report was not insufficient for the ALJ to make a determination as to Plaintiff's disability. Rather, Dr. Kim's physical limitations opinion was inconsistent with and not supported by his own clinical notes or other evidence in the record. For instance, the ALJ cited Dr. Sioson's report, ME testimony, and state agency opinions to conclude the record did not support Dr. Kim's opinion regarding Plaintiff's limitations. In addition, the ALJ found Dr. Kim's treatment notes lacked observations of Plaintiff's physical capacity. Indeed, the treatment notes reflected Plaintiff's complaints of pain and a conservative treatment regimen. While some of Dr. Kim's treatment notes showed some evidence to support physical examination[5] (Tr. 521, 523, 618, 621), they do not support such severe limitations as imposed by Dr. Kim. For example, Dr. Kim's minimal notations of decreased range of motion and tenderness do not support his opinion that Plaintiff would need to rest by lying down for a total of three hours in an eight-hour work day.

Further, Plaintiff was represented by counsel before the ALJ in this case.  At the hearing, the ALJ asked Plaintiff's attorney if the written record was complete, and he confirmed that it was.  (Tr. 718-19). Dr. Kim's treatment notes were sufficient for the ALJ to conclude they were inconsistent with and did not support his opinion of Plaintiff's functional limitations. Therefore, the ALJ was not

---

4. 20 C.F.R. §§ 404.1512 and 416.912 have been amended and relocated to 20 C.F.R. §§ 404.1520b and 416.920b as of March 26, 2012. However, Plaintiff's claim is governed by the pre-amended regulations as they were in effect at the time of the ALJ decision.

5. There was also some evidence of Dr. Kim's observations of Plaintiff's physical limitations before Plaintiff's alleged onset date. (Tr. 532).

required to recontact Dr. Kim.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

<u>     s/James R. Knepp, II     </u>

United States Magistrate Judge